UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHEILA ROGERS, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-5303** |
| **ORLEANS PARISH SHERIFF OFFICE, ET AL.** | **SECTION: "P" (5)** |

## ORDER AND REASONS

Before the Court is a Rule 12(b)(6) motion to dismiss filed by Defendants Susan Hutson and Latoya Armwood.[1] Plaintiffs Sheila Rogers and Steven Rogers filed a response in opposition to the motion,[2] and Defendants filed a reply in further support of the motion.[3] Having considered the motion, the parties' memoranda, the record, and the applicable law, the Court issues this Order and Reasons granting Defendants' motion.

**I.    BACKGROUND**

Plaintiff Sheila Rogers is a former employee of the Orleans Parish Sheriff's Office ("OPSO"). Mrs. Rogers alleges she began her employment with OPSO in 2015, at which time she informed her employer of her disability—an eye disease that causes blurred vision and sensitivity to light and glare—that required certain accommodations. According to Mrs. Rogers, OPSO accommodated her disability without issue until 2020, when she was assigned a new supervisor. This new supervisor was Defendant Armwood. Mrs. Rogers alleges that while under Defendant Armwood's supervision, she faced discrimination on the basis of her disability and was subject to unwarranted reprimand, retaliation, intimidation, and a hostile working environment.

---

[1] R. Doc. 43.
[2] R. Doc. 44.
[3] R. Doc. 45.

Mrs. Rogers originally filed this action against Armwood and OPSO, asserting claims under (a) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Counts I, II, and III); (b) Louisiana employment discrimination law ("LEDL"), La. R.S. 23:323, *et seq.* (Count IV); (c) Louisiana whistleblower law, La. R.S. 23:967, *et seq.* (Count V); and (d) Louisiana tort law for intentional infliction of emotional distress ("IIED") (Count VI).[4] The original complaint also included an allegation that both Mr. and Mrs. Rogers have suffered a loss of consortium as a result of the defendants' conduct. Plaintiffs further alleged that OPSO was vicariously liable for the damages caused by its employees and sustained by Mrs. Rogers.

After considering motions to dismiss filed by OPSO and Armwood, the Court (1) dismissed *with prejudice* all claims against OPSO on the basis that OPSO is not an entity capable of being sued; (2) dismissed *with prejudice* the ADA, LEDL and whistleblower claims against Armwood on the basis that Armwood was not Mrs. Rogers' "employer;" (3) dismissed *without prejudice* the IIED claim against Armwood on the basis that the factual allegations contained in the complaint were insufficient to state a claim for IIED; and (4) held that Mr. Rogers could not assert any derivative claim for loss of consortium given that all of Mrs. Rogers' claims had been dismissed.[5] The Court nevertheless allowed Plaintiffs to file an amended complaint addressing the deficiencies in the complaint.[6]

Plaintiffs' amended complaint is substantially similar to the original complaint, except that in the place of OPSO, Plaintiffs named the proper defendant, Sheriff Susan Hutson, in her official capacity; and Plaintiffs also added factual allegations to support Mrs. Rogers' IIED claim. Defendants Hutson and Armwood now move this Court for partial dismissal of Plaintiffs' claims

---

[4] R. Doc. 1 at 4, 10–15.
[5] R. Doc. 37.
[6] *Id.*

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In particular, Defendants move to dismiss Mrs. Rogers' IIED claim (Count VI) and Mr. Rogers' derivative claim for loss of consortium.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[7] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[9] The court need not, however, accept as true legal conclusions couched as factual allegations.[10] To be legally sufficient, a complaint must establish more than a "sheer possibility" the plaintiff's claims are true.[11] If it is apparent from the face of the complaint that an insurmountable bar to relief exists, and the plaintiff is not entitled to relief, the court must dismiss the claim.[12] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[13]

## III.    LAW AND ANALYSIS

Defendants Armwood and Hutson move to dismiss Mrs. Rogers' IIED claim against them on two separate bases. First, Defendants argue Plaintiffs' allegations are insufficient to state a claim for IIED under the standard established by the Louisiana Supreme Court.[14] Second,

---

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).
[8] *Id.*
[9] *Lormand v. U.S. Unwired, Inc.*, 565 F. 3d 228, 232 (5th Cir. 2009).
[10] *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.
[11] *Id.*
[12] *Lormand*, 565 F.3d at 255–57.
[13] *Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498 (5th Cir. 2000).
[14] R. Doc. 43-1 at 4–9.

3

Defendants argue Mrs. Rogers' IIED claim is prescribed because the last act alleged in the complaint occurred in November 2021, and Plaintiffs did not file this lawsuit until December 15, 2022, more than one year later.[15] Plaintiffs respond in opposition to both arguments.[16]

As this Court stated in its prior Order and Reasons,[17] to prove IIED in Louisiana, a plaintiff must show: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[18] Extreme and outrageous conduct is that which exceeds "all possible bounds of decency" and is "regarded as atrocious and utterly intolerable in a civilized community."[19] "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[20] And, workplace disciplinary actions are not ordinarily actionable.[21] Additionally, "[t]he conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like."[22]

The Court previously dismissed without prejudice Mrs. Rogers' IIED claim against Armwood because Plaintiffs' allegations that Mrs. Rogers was subjected to disciplinary action, the cutting of her lock, an irate inmate, and the cancellation of her insurance when she was on leave did not constitute "extreme conduct" sufficient to state a claim for IIED.[23] Plaintiffs' amended complaint largely restates the allegations from the original complaint, but adds that Armwood

---

[15] *Id*. at 9.
[16] R. Doc. 44 at 5–13.
[17] R. Doc. 37.
[18] *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).
[19] *Id.*
[20] *Id.*
[21] *Id.* at 1210.
[22] *Id.*
[23] R. Doc. 37 at 7.

"engaged in a pattern of behavior that included publicly making inappropriate jokes and insults about Mrs. Rogers in front of her colleagues and higher-ranked officials."[24] According to the amended complaint, on one occasion, Armwood and another Sergeant were discussing and ridiculing Mrs. Rogers' need to commute to work during daylight hours when Armwood made a derogatory comment about Mrs. Rogers' inability to navigate well at night, stating "she is out there driving around with one eye and can't see."[25] Armwood and the Sergeant then shared a laugh.[26] This conversation was allegedly overheard by Mrs. Rogers and other witnesses who were nearby.[27] Plaintiffs allege that Armwood conducted this conversation "within earshot of others" with the intention of publicly embarrassing Mrs. Rogers and that "this targeted mockery" caused Mrs. Rogers extreme embarrassment and depression and contributed significantly to her decision to take stress leave from her position.[28]

These new allegations do not save Mrs. Rogers' IIED claim. Indeed, considering all allegations related to the conduct of Defendant Armwood and other OPSO employees, Plaintiffs still have not alleged conduct that rises to level of "extreme and outrageous" for purposes of an IIED claim.[29] Nor have Plaintiffs sufficiently alleged that the conduct of Armwood or the other OPSO employees was intended or calculated to cause severe emotional distress, rather than some

---

[24] R. Doc. 41 at 7.
[25] *Id.* at 7–8.
[26] *Id.* at 8.
[27] *Id.*
[28] *Id.*
[29] *See, e.g.*, *Washington v. Mother Works, Inc.*, 197 F. Supp. 2d 569, 572–73 (E.D. La. 2002) (repeated racial slurs, ridicule for missing work to care for a mother who was suffering from cancer, differing treatment than other managers, and termination did not rise to a level of extreme and outrageous such that plaintiff-employee would prevail on her IIED claim); *Stewart v. Par. of Jefferson*, 95-407 (La. App. 5 Cir. 1/30/96), 668 So. 2d 1292, *writ denied,* 96-0526 (La. 4/8/96), 671 So. 2d 340 (no cause of action for IIED when a supervisor harassed plaintiff-employee for two years, questioned the employee's personal life, increased the employee's workload, and pressured the employee to accept a demotion which ultimately led to the employee's termination); *Beaudoin v. Hartford Acc. & Indem. Co.*, 90-863 (La. App. 3 Cir. 2/12/92), 594 So. 2d 1049, *writ denied,* 598 So. 2d 356 (La. 1992) (a supervisor engaging in eight months of harassment including shouting, cursing, calling employee names, commenting on the inferiority of women, and falsely accusing employee of making mistakes did not constitute extreme and outrageous conduct even though employee felt singled out for abuse).

lesser degree of fright, humiliation, worry, or the like. For these reasons, the Court must dismiss Mrs. Rogers' IIED claim against Defendants Armwood and Hutson.[30] Consequently, Mr. Rogers' claim for loss of consortium, which is derivative of Mrs. Rogers' IIED claim, must also be dismissed.[31]

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Partial Rule 12(b)(6) Motion to Dismiss (R. Doc. 43) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Sheila Rogers' IIED claim against Defendants Armwood and Hutson is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff Steven Rogers' claim for loss of consortium is **DISMISSED WITH PREJUDICE**.

Because the only remaining claim against Defendant Latoya Armwood was the IIED claim, which is now dismissed, and the only claim by Plaintiff Steven Rogers was the derivative claim for loss of consortium, which is also now dismissed, the Clerk of Court shall update the docket sheet in this matter to reflect that Defendant Latoya Armwood and Plaintiff Steven Rogers have been terminated from this action.

New Orleans, Louisiana, this 14th day of January 2025.

                                      **DARREL JAMES PAPILLION**
                                      **UNITED STATES DISTRICT JUDGE**

---

[30] The Court therefore pretermits any consideration of Defendants' separate argument that the IIED claim is subject to dismissal because it has prescribed.

[31] *See Tolis v. Shields*, 96-0668 (La. App. 4 Cir. 11/20/1996), 684 So. 2d 523, 525.