UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHEILA ROGERS, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 22-5303 |
| ORLEANS PARISH SHERIFF OFFICE, ET AL. | * | SECTION "P" (2) |

## ORDER AND REASONS

Before me is Defendant Susan Hutson's Motion to Compel.  ECF No. 60.  Plaintiff Sheila Rogers filed a timely Opposition Memorandum, and Huston filed a timely Reply.  ECF Nos 68, 71.  No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Defendant Susan Hutson's Motion to Compel is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

## I.    BACKGROUND

Sheila Rogers, a former employee of the Orleans Parish Sherriff's Office ("OPSO"), filed this suit alleging disability discrimination, unwarranted reprimands, retaliation, intimidation, and a hostile working environment.  ECF No. 41 at 5-8 (¶¶ 8-32).  Rogers asserts that she informed OPSO of her disability (i.e., an eye disease that causes blurred vision and sensitivity to light and glare) when she began employment in 2015, and she requested certain accommodations, which OPSO granted until a new supervisor (Latoya Armwood) arrived in 2020.  *Id.* at 4-5 (¶¶ 2-7). Rogers seeks damages for, among other things, emotional distress and back pay.  *Id.* at 9 (¶ 38); ECF No. 60-2 at 107.

Hutson's February 24, 2025, discovery requests sought to have Rogers execute attached

1

authorization forms for release of tax, employment, medical and mental health, criminal, and social security earnings information. ECF No. 60-2 at 22 (RFP No. 14). After expiration of the thirty-day response period, on April 2, 2025, Rogers requested an additional 30 days to respond, and Hutson agreed, but asserted that any objections were waived by failure to respond within the deadline. ECF No. 58-2.

On May 2, 2025, Rogers served her responses to, among others, RFP No. 14 objecting on the bases of relevance, overbreadth, undue burden, and privacy. ECF No. 58-1 at 26-27. The production did not include signed employment authorizations and limited the medical authorizations to records that relate to her employment with OPSO and/or involve "conditions placed at issue" in this case from May 2015 to February 2022. *See* ECF No. 60-2 at 31-45. On September 19, 2025, Rogers served a supplemental production that was not satisfactory to Huston because of the absence of employment authorizations and the narrowed scope of the medical authorizations. *See id.* at 90-106.

Hutson has attempted to reach an agreement on a proposed protective order, circulating this Court sample order. *See id.* at 55, 68-78, 83. While Rogers initially indicated she would return revisions to same by September 15, 2025, she ultimately found the Court's sample order overly broad and contends it may cause unintended discovery complications and additional motion practice. *Id.* at 46, 85.

## II.    <u>THE PENDING MOTION</u>

In this Motion to Compel, Huston request the Court order Rogers to produce (1) an executed authorization for the release of Rogers' medical records, using the form originally provided by Huston, either leaving the provider field blank or executing separate authorizations for all Rogers' providers (Rebecca Metzinger, Bowers, Delmar Caldwell, Lionel Boudreaux, Alan

Halle, Linda Bui, Rebecca Nguyen, Debra Schexnayder, and David Reiss),[1] and (2) an executed authorization for the release of Rogers's employment records, using the form originally provided by Huston. ECF No. 60 at 1; *see* ECF No. 60-2 at 26-29 (authorization for medical records), 30 (authorization for employment records). Huston asserts Rogers has waived her objection to Huston's discovery requests by not responding or requesting an extension by March 26, 2025. ECF No. 60-1 at 18-19. Huston then argues that Rogers' medical records from all providers though present are discoverable because she asserts disability claims and alleges emotional distress. *Id.* at 19-21. Huston contends Rogers' subsequent employment records are discoverable as same are relevant to mitigation (i.e., whether she is still employed or was terminated for cause), the need for accommodations, state of mind, and credibility. *Id.*

In Opposition, Rogers contends the parties "informally" agreed to an extension of her discovery deadline pursuant to FED. R. CIV. P. 29, which preserved her objections. ECF No. 68 at 4, 15-16. Even apart from the stipulation, she contends good cause exists to excuse waiver because the requests were overly broad and extensive and Huston suffered no prejudice. ECF No. 68 at 16-17. As to the medical records, Rogers acknowledges that her mental health and vision records are relevant but contends her entire medical history is not. *Id.* at 18. Citing *Singleton v. Cannizzaro*,[2] Rogers argues she has not placed *all* her medical conditions at issue, and her request for emotional distress damages does not serve to waive privilege over all irrelevant conditions. *Id.* at 18-19. She argues her narrowed authorizations are less burdensome on her providers. *Id.* at 19-20. As to the employment records, Rogers asserts she has produced W-2 forms, tax returns, a

---

[1] *See* ECF 60-2 at 31-47 for names of medical providers. A September 11, 2025, email from Huston's counsel to Rogers' indicates Caldwell, Metzinger, Boudreaux, and Bui are optometrists or ophthalmologists. *Id.* at 46. Halle, Nguyen, Bowers, Schexnayder, and Reiss have only been described as "non-optometrists/ophthalmologist providers . . . ." *Id.* at 82.

[2] No. 17-10721, 2020 WL 375600 (E.D. La. Jan. 23, 2020).

signed social security authorization and award letter, and the request for payroll records is redundant, disproportionate and burdensome. *Id.* at 21-23. She further argues the accommodations requests to subsequent employers and disciplinary record are irrelevant. *Id.* at 24-31. Rogers indicates she has no objection to providing authorizations that extend through the present and has produce some authorizations with her scope limitations. *Id.* at 5.

In Reply, Huston notes Rogers requested an extension after the deadline lapsed and reiterates that Rogers waived her objections. ECF No. 71 at 2-3, 8-9. Huston then reiterates that all of Rogers' medical and employment records are discoverable. *Id.* at 9-13.

## III.    APPLICABLE LAW

### A.  Scope of Discovery

Rule 26 of the Federal Rules of Civil Procedure authorizes parties to:

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[3]

Information need not be admissible into evidence to be discoverable.[4] Rather, information merely needs to be ***proportional*** and ***relevant*** to any claim or defense.[5] The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them."[6]

---

[3] FED. R. CIV. P. 26(b)(1).
[4] *Id.*
[5] *Id.*
[6] FED. R. CIV. P. 26(b)(1) advisory committee's notes to 2015 amendment.

The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissible evidence at the trial stage.[7] At the discovery stage, relevance includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[8] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[9] If relevance is in doubt, a court should allow discovery.[10] Facts that are not considered in determining the ultimate issues may be eliminated in due course of the proceeding.[11]

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[12] discovery does have "ultimate and necessary boundaries."[13] The parties and the court have a collective responsibility to ensure that discovery is proportional, and Rule 26(b)(2)(C) *mandates* that the Court limit the frequency or extent of discovery otherwise allowed, if it determines:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

---

[7] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).

[8] *Id*. (brackets and citations omitted).

[9] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (Morgan, J.) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (Ramirez, M.J.)).

[10] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc*., 813 F.2d 1207, 1212 (Fed. Cir. 1987)).

[11] *Rangel*, 274 F.R.D. at 590 n.5 (quoting *In re Gateway Eng'rs, Inc.*, No. 09-209, 2009 WL 3296625, at *2 (W.D. Pa. Oct. 9, 2009)).

[12] *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (citations omitted).

[13] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

"The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery."[14]

### B. Requests for Production and Waiver

Rule 34 authorizes a party to request another party to produce documents or items within that party's possession, custody or control. FED. R. CIV. P. 34(a)(1). The request must describe each item or category of items with "reasonable particularity." *Id.* at 34(b)(1)(A). The party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld.[15]

The responding party must produce responsive documents not only that are within that party's actual, physical possession, but also documents that are within the party's constructive possession, custody or control. FED. R. CIV. P. 34(a)(1). A party has "control" over documents or materials that it has the legal right or practical ability to obtain even though it has no copy and even if the documents are owned or possessed by a nonparty.[16] Thus, "possession, custody, and control" does not simply contemplate physical and actual possession but rather whether the responding party could come into possession of the requested document.[17]

---

[14] FED. R. CIV. P. 26(b)(1) advisory committee's notes to 2015 amendment.

[15] *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citation omitted).

[16] *Becnel v. Salas*, No. 17-17965, 2018 WL 691649, at *3 (E.D. La. Feb. 2, 2018) (citations omitted); *Est. of Monroe v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004) (citation omitted).

[17] *Ruby Slipper Cafe, LLC v. Belou*, No. 18-1548, 2020 WL 4905796, at *3-4 (E.D. La. Jan. 15, 2020) (citing *Becnel*, 2018 WL 691649, at *3 ("Rule 34's definition of possession, custody, or control, includes more than actual possession or control of [documents]; it also contemplates a party's legal right or practical ability to obtain [documents] from a [non-party] to the action")).

Like Rule 33(b)(2), Rule 34(b)(2) requires a party to provide responses within 30 days after being served.  In the absence of an extension of time or good cause, the failure to file a written response in the time fixed by the rule generally constitutes a waiver of any objection.[18]  Although Rule 34 does not explicitly address waiver as in Rule 33, the Fifth Circuit had held that waiver applies to both the failure to timely respond to interrogatories and requests for production.[19]

Rule 34(b)(2) authorizes parties to modify the response deadline for requests for production consistent with Rule 29.  Under Rule 29(b), parties may stipulate to the "procedures governing or limiting discovery" so long as they do not alter the discovery timeline.[20]  A stipulation is an agreement between counsel respecting a matter before the court, and the Fifth Circuit has interpreted Rule 29(b) to require a stipulation be in writing.[21]

Whether a party has good cause sufficient to excuse an untimely response is a question of fact addressed on a case-by-case basis.[22]  In determining whether good cause exists and waiver should be denied, courts consider:

> (1) the length of the delay or failure to particularize;
> (2) the reason for the delay or failure to particularize;

---

[18] *Ordoyne v. McDermott, Inc*., No. 99-3456, 2000 WL 1154616, at *1 (E.D. La. Aug. 14, 2000) (citing FED. R. CIV. P. 33(b)(4)).

[19] *In re United States*, 864 F.2d 1153, 1156 (5th Cir.1989)("[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."); *see also* 8A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE CIV. 2d § 2204 (2d ed. 1994) ("the discovery rules constitute an integrated mechanism and they must be read in *pari materia*."); *McLeod, Alexander, Powel & Apffel v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.1990) ("[With respect to required specificity,] [w]e see no reason to distinguish the standards governing responses to interrogatories from those that govern responses to production requests."); *B&S Equip. Co. v. Truckla Servs., Inc.,* Nos. 09-3862, 10-0832, 10-1168, 10-4592, 2011 WL 2637289, at *5 (E.D. La. July 6, 2011) (citing cases).

[20] *see also Riley v. Walgreen Co*., 233 F.R.D. 496, 500 (S.D. Tex. 2005) (citing FED. R. CIV. P. 29).

[21] *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001); *see also Young v. LeBlanc*, No. 23-681, 2025 WL 823898, at *4 n.5 (M.D. La. Mar. 11, 2025) (noting that, while the current version of Rule 29 does not expressly require stipulations to be in writing, the pre-2007 version of Rule 29 did require written stipulations and that the 2007 amendment was "stylistic only and not intended to remove any substantive requirements" (citing FED. R. CIV. P. 29 advisory committee's note to 2007 amendment)).

[22] *See, e.g., Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 156–57 (S.D. Tex. 2009) ("Acknowledging the harshness of a waiver sanction, courts have reserved the sanction for those cases where the offending party committed unjustified delay in responding to discovery. Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver." (quoting *Ritacca v. Abbot Labs.*, 203 F.R.D. 332, 335 (N.D. Ill 2001))).

(3) whether there was any dilatory or bad faith action on the part of the party that failed to raise the objection properly;

(4) whether the party seeking discovery has been prejudiced by the failure;

(5) whether the document production request was properly framed and not excessively burdensome; and

(6) whether waiver would impose an excessively harsh result on the defaulting party.[23]

Courts thus examine the circumstances behind the failure to file a timely response to determine whether it was inadvertent, defiant, or part of a larger calculated strategy of noncompliance, whether the party was acting in good faith, as opposed to acting in a disinterested, obstructionist or bad faith manner, and whether the delay resulted in any prejudice.[24]  The court also considers the need to preserve the integrity of the rules and any lesser appropriate sanction.[25]

Even if there were no extension of time nor good cause to excuse waiver, the failure to timely object or respond to discovery does not constitute an automatic waiver; "the court retains discretion to decline to compel production of requested documents when the request far exceeds the bounds of fair discovery, even if a timely objection has not been made."[26]  Indeed, a party's failure to timely object to the scope of discovery is not the sole deciding factor in a motion to compel discovery, as Rule 26(b)(2)(C) permits the court to *sua sponte* limit discovery that exceeds the permissible scope set forth in Rule 26(b)(1).[27]

---

[23] *Enron*, 258 F.R.D. at 157 (quoting *Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005)), *cited with approval in Salman v. Balderas*, No. 18-10966, at *3 (E.D. La. Aug. 2, 2019).

[24] *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, No. 07-2426, 2008 WL 2036816, at *5 (S.D. Tex. May 9, 2008) (internal quotations omitted).

[25] *Id.*

[26] *Deane v. Dynasplint Sys., Inc.*, No. 10-2085, 2015 WL 1638022, at *2 (E.D. La. Apr. 13, 2015) (citing cases); *accord. Lash v. Ethicon-Endo Surgery*, No. 03-244, 2003 WL 21920901, at *1 (E.D. La. Aug. 7, 2003) (finding that, despite the responding party's failure to object, "the Court has the discretion to determine whether the discovery sought is relevant or 'patently improper'" (citing *Zapata Protein Inc. v. H.J. Baker & Bro., Inc.*, No. 95-3888, 1996 WL 719373 (E.D. La. Dec. 9, 1996); *Godsey v. United States*, 133 F.R.D. 111 (S.D. Miss. 1990))).

[27] *See* FED. R. CIV. P. 26(b)(2)(C)(iii); *see also Rainey v. State Farm Fire & Cas. Ins. Co.*, No. 09-698, 2009 WL 10680066, at *1 (E.D. La. Sept. 23, 2009).  Indeed, the fact that a party abdicates its role in controlling excessive discovery does not authorize the court to shirk its own responsibility under the 2015 Amendments to the Federal Rules of Civil Procedure. *Vinet v. BP Expl. & Prod. Inc.*, No. 18-9527, 2019 WL 3574294, at *6 (E.D. La. Aug. 6, 2019) (citing FED. R. CIV. P. 26(b)(2)(C)(iii)).  Even before the 2015 amendments, courts always retained discretion to decline to compel production of requested discovery "when the request far exceeds the bounds of fair discovery,

## C.  Written Authorizations

The ambit of "control" under Rule 34(a)(1) extends to a party's medical and employment records, because by either granting or withholding her consent, a party may determine who shall have access to them.[28]  Indeed, as many courts within the Fifth Circuit, including this Court has recognized,  Rule 34, along with Rule 37, empowers federal courts to compel parties to sign written authorizations consenting to the production of various documents.[29]

The regulations promulgated under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")[30] provide specific avenues for a party to obtain protected health information[31] from "covered entities."[32]  One avenue is with an individual's express authorization to release her medical  information  in  a  "valid  authorization  form."[33]    For  a  covered  entity  to  disclose

---

even if a timely objection has not been made." *Id.* (citing *Schooler v. Wal-Mart Stores, Inc.*, No. 14-2799, 2015 WL 4879434, at *1 (E.D. La. Aug. 14, 2015); *Meche v. Maint. Dredging, Inc.*, No. 10-3653, 2012 WL 519882, at *2 (E.D. La. Feb. 16, 2012) (citing *Fifty-Six Hope Road Music, Ltd., v. Mayah Collections, Inc.*, No. 05-1059, 2007 WL 1726558, at *4 (D. Nev. June 11, 2007); *Lucero v. Martinez,* No. 03-1128, 2006 WL 1304945, at *2 (D.N.M. Mar. 11, 2006); *Kolenc v. Bellizzi,* No. 95-4494, 1999 WL 92604, at *3 (S.D.N.Y. Feb. 22, 1999))).

[28] *See Smith v. Md. Cas. Co.*, 42 F.R.D. 587, 589 (E.D. La. 1967) (Rubin, J.) ("Rule 34 permits the Court to require a party to produce any document under his control.  Obviously, the Rogers is in control of these records [held by hospitals], because, by either granting or withholding her consent, she may determine who shall have access to them. Therefore, she is ordered to produce them or to execute an authorization for Huston to examine them."); *see also EEOC v. L-3 Commc'ns Integrate Sys., LP,* No. 17-538, 2018 WL 3548870, at *3 (N.D. Tex. July 24, 2018) ("[W]ritten authorization forms may be compelled under Rule 34 because they compel parties to disclose documents that are within their control." (citation omitted)).

[29] *See Smith*, 42 F.R.D. at 589; *Allen v. Indian Harbor Marine, Inc.*, No. 96-3135, 1997 WL 666210, at *1–2 (E.D. La. Oct. 24, 1997); *Lischka v. Tidewater Servs., Inc.*, No. 96-296, 1997 WL 27066, at *2 (E.D. La. Jan. 22, 1997) (Vance, J.); *DeGruy-Hampton v. Ochsner Clinic Found.*, No. 20-2417, 2021 WL 2514681, at *9 (E.D. La. June 18, 2021); *Hunters Run Gun Club, LLC v. Baker*, No. 17-176, 2019 WL 507479, *6–8 (M.D. La. Feb. 7, 2019); *Broussard v. Callon Petroleum Co*., No. 04-2264, 2005 WL 8178118, at *1 (W.D. La. Oct. 28, 2005); *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226–28 (N.D. Tex. 2016) (ordering party to sign authorization for release of social security records); *see also Zamora v. GC Servs., LP*, No. 15-048, 2016 WL 8853096, at *4 (W.D. Tex. Aug. 19, 2016) (recognizing that the majority of courts to consider the issue have concluded that a party may be compelled to execute an authorization for release of records).

[30] Pub. L. No. 104-191, §§ 261-264, 110 Stat. 1936 (1996), 42 U.S.C. § 1320d, *et seq*.

[31] "Protected health information" is defined as "'individually identifiable' information that is 'created or received by a health care provider' (or similar entities) that '[r]elates to the past, present, or future physical or mental health or condition of an individual' or the 'provision of health care to an individual.'" *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022) (quoting 45 C.F.R. § 160.103).

[32] *Morris v. Wyeth, Inc*., No. 09-0854, , at *4 (W.D. La. Mar. 22, 2010) (citation omitted). A "covered entity" is defined as (1) a health plan, (2) a health clearinghouse, or (3) a healthcare provider who transmit any health information in electronic form in connection with a transaction covered by 45 C.F.R. §§ 1601.101 – 164.535.  § 160.103.

[33] *Murphy v. Dulay*, 768 F.3d 1360, 1369 (11th Cir. 2014) (citing 45 C.F.R. § 164.502(a)(1)(iv) (allowing covered entities to disclose protected health information "pursuant to and in compliance with a valid authorization"); 45 C.F.R.

"psychotherapy notes,"[34] express authorization in a valid authorization form is generally required.[35] While courts can compel parties to execute a valid authorization form,[36] they do not when the form would be legally invalid.[37]

To be a valid, an authorization must contain (1) "[a] description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion"; (2) "[t]he name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure"; (3) "[t]he name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure"; (4) "[a] description of each purpose of the requested use or disclosure"; (5) "[a]n expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure"; and (6) the "[s]ignature of the individual and date."[38] An authorization is defective and thus "not valid" if it lacks any of these elements.[39]

Further, the authorization must also "contain statements adequate to place the individual

---

§ 164.508 ("Except as otherwise permitted . . . by [HIPAA], a covered entity may not use or disclose protected health information without an authorization that is valid . . . .")); *see also Billiot v. Triple Marine, LLC*, No. 19-449, 2019 WL 2524441, at *2 (E.D. La. June 19, 2019).

[34] According to § 164.501, psychotherapy notes are defined as:

> notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint, or family counseling session and that are separated from the rest of the individual's medical record. *Psychotherapy notes* excludes medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: Diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date.

[35] § 164.508(a)(2).

[36] *Billiot*, 2019 WL 2524441, at *2; *see also Morris*, 2010 WL 1141224, at *4.

[37] *Billiot*, 2019 WL 2524441, at *1-2 (denying "Motion to Compel Blank Medical Authorizations" because, among other things, the "blank forms defendant asks plaintiff to sign . . . [are defective]. Thus, defendant in effect requests that the court require plaintiff to produce to defendant documents that would be nullities and legally invalid at the time of their production." (citing *Riley v. Methodist Healthcare Memphis Hosps.*, 371 F. App'x 481 (6th Cir. 2018) (medical authorizations forms that left blank four lines that should have specifically identified the medical care provider from whom records release was requests held invalid as not HIPAA complaint))); *Goodno v. Endurance Am. Spec. Ins. Co.,* No. 19-11221, 2020 WL 13551903, at *2-3 (E.D. La. Sept. 2, 2020) (denying motion to compel defendant execute HIPAA authorization form because the forms were not in compliance with HIPAA regulations).

[38] § 164.508(c)(1)(i)-(vi); *accord. Billiot*, 2019 WL2524441, at *2 (quoting *Murphy*, 768 F.3d at 1370).

[39] § 164.508(b)(2)(ii).

on notice of all of the following:" (1) the individual's "right to revoke," the exceptions to the right

to revoke, and "a description of how the individual may revoke"; (2) that a covered entity "may

not condition treatment, payment, enrollment or eligibility for benefits on whether the individual

signs the authorization," subject to narrow exceptions; and (3) "the potential for information

disclosed pursuant to the authorization to be subject to redisclosure by the recipient and no longer

be protected by [HIPAA]."[40]

    Along with HIPAA's regulations, courts must also consider an authorization's scope as it

is governed by Rule 26's relevance and proportionality standards.[41]  Blanket forms with no

limitation on subject matter or temporal scope exceed the bounds of permissible discovery.[42]

    As to employment records, signed employment record authorizations may be compelled

where the requesting party has established the relevance of such records to a claim or defense in

the case,[43] and the scope of the records sought is proportional to the needs of the case.[44]  Ultimately,

---

[40] *Murphy*, 768 F.3d at 1370 (quoting § 164.508(b)(4), (c)(2)).

[41] *See, e.g.*, *Billiot*, 2019 WL 2524441, at *1 (noting previous opinions ordering the production of executed blank records release authorization forms did not address "the important privacy concerned recognized by Congress and contained in [HIPAA] and its effectuating federal regulations or [ ] the precise discovery standard contained in [Rule] 26(b)(1)"); *Taylor v. United States*, No. 19-10023, 2020 WL 6204310, at *4 (E.D. La. Feb. 5, 2020) (denying motion to compel HIPAA authorization and limiting discovery request to only medical records from treating facility for one-year-old decedent's birth to date of last treatment); *Garza v. AAA Cooper Transp.*, No. 20-1, 2021 WL 3777739, at *4-5 (S.D. Tex. May 18, 2021) (considering the relevance of documents within the scope of an authorization for medical records); *Layman Nat'l Oil Well Varco, L.P.*, No. 07-101, 2009 WL 10669233, at *1 (W.D. Tex. Mar. 5, 2009) (limiting temporal scope of HIPAA authorization form).

[42] *Taylor*, 2020 WL 6204310, at *4 (denying motion to compel HIPAA authorization and limiting discovery request to only medical records from treating facility for one-year-old decedent's birth to date of last treatment); *Alley v. Shelter Mut. Ins. Co.*, No. 20-1260, 2021 WL 8892879, at *1 (D. Kan. Jan. 15, 2021) (noting that, "[a]lthough some of [Rogers's] medical records are clearly relevant and discoverable, *all* of her medical records are not" and court orders authorizing the release of private health information must be limited to records that are relevant to the case).

[43] *See, e.g.*, *Rivera v. United States*, No. 15-21, 2015 WL 13649403, at *9 (W.D. Tex. Dec. 22, 2015), *Lutzeier v. Citigroup, Inc.*, No. 14-183, 2015 WL 1853820, at *3 (E.D. Mo. Apr. 22, 2015).

[44] *See, e.g.*, *Coleman v. Cedar Hill Indep. Sch. Dist.*, No. 21-2080, 2022 WL 1470957, at *4 (W.D. Tex. May 10, 2022) (finding proposed employment release disproportionate to needs of case due to lack of time limitation (citing cases)); *Prado v. Equifax Info. Servs. LLC*, 331 F.R.D. 134, 139 (N.D. Cal. 2019) (finding blanket request for employment records overbroad and allowing Rogers to redact or withhold portions of employment records unrelated to claim or defense).

determining the proper scope of discovery falls within the broad discretion of the trial court.[45]

## IV.    **ANALYSIS**

### A.  **Waiver**

When a stipulation extends a response deadline after the deadline has lapsed, the stipulation must "explicitly permit[ ] [the respondent] to retain [her] right to object" to avoid waiver.[46]  There is no such agreement here as Huston explicitly stated that "Rogers has waived any objections" to her discovery requests in her April 4, 2025, email agreeing to extend the deadline to May 2, 2025. ECF No. 58-2 at 1.  Although Rogers' responses were 37 days late, she contends that she had good cause for the Court to excuse her untimely responses because Huston's discovery requests were extensive.  ECF No. 68 at 16.  Of course, "the proper course for a party who needs more time to properly respond to discovery requests is not to ignore the 30-day deadline (without a court order or agreement of the parties) . . . but rather to seek more time."[47]

Regardless, even without a timely objection, this Court must review the authorization forms and their scope to ensure that discovery is within the scope of Rule 26 and not unreasonably cumulative, duplicative or burdensome.  *See* FED. CIV. P. 26(b)(2)(C)(i), (iii).[48]

### B.  **Medical Records**

Huston has provided two medical authorization forms:  (1) an authorization for disclosure

---

[45] *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982) ("And, as in all discovery matters, the district court has broad discretion in limiting the scope of discovery." (citation omitted)); *Brown v. DFS Servs., L.L.C.*, 434 F. App'x 347, 351-52 (5th Cir. 2011).

[46] *Aker Sols., Inc. v. Shamrock Energy Sols. LLC*, No. 16-2560, 2020 WL 10486333, at *5 (E.D. La. Oct. 5, 2020).

[47] *Ferguson v. Sw. Reg'l PCR LLC*, No. 22-182. 2023 WL 4938091, at *5 (N.D. Tex. June 22, 2023) (quoting *Lopez*, 327 F.R.D. at 583) (considering the *Hall* factors).

[48] *See also Guillory v. Carrington Mortg. Servs. LLC*, No. 22-192, 2023 WL 4688133, at *2 n.2 (M.D. La. July 21, 2023) (noting that, while the respondent did not make a relevance objection, it is "for the Court to decide the proper scope of discovery, which it may do even on its own motion" (citing *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 591 (N.D. Tex. 2017) ("[U]nder Rule 26(b)(1) and 26(b)(2)(C)(iii), a court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case . . . and the court must do so even in the absence of a motion."); FED. R. CIV. P. 26(b)(2)(C)(iii) ("On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."))).

of psychotherapy notes and (2) an authorization for disclosure of health information "[e]xcluding psychotherapy notes."  ECF No. 60-2 at 26-29.[49]  Hutson asks that Rogers be compelled to execute each form but leave the provider field blank or execute separate forms for each healthcare provider. ECF No. 60 at 1.

Rogers cannot be required to execute authorizations "that would be nullities and legally invalid at the time of their production."[50]   "The name or other specific identification of the person[ ] authorized to make the requested . . . disclosure" is a core element required for a valid authorization form.  See § 164.508(c)(ii).  Likewise, "[a]n expiration date or an expiration event that relates to the . . . purpose of the . . . disclosure" is mandatory.  See id. § 164.508(c)(v).  For these reasons, the requested authorization forms are invalid as drafted, thus Rogers cannot be required to execute the authorizations as currently drafted.  See id. § 164.508(b)(2)(ii).

Rogers appears to concede that her mental health records are relevant.[51]  She contests the other medical form's scope, arguing that her mental health and vision records are the only relevant conditions at issue.  ECF No. 68 at 19.  As to the scope of the authorizations, the party resisting discovery must show specifically how the information sought is not relevant or otherwise objectionable.[52]

Courts have routinely held that, by putting one's medical condition at issue, a plaintiff waives any privilege to her medical records which she may otherwise have been entitled based on

---

[49]  Given the separate authorization for psychotherapy notes, the exclusion language appears unnecessary.
[50]  Billiot, 2019 WL 2524441, at *2 (addressing defendant's request that the court compel plaintiff to sign "blank forms" and finding they "fail to both specify the medical provider from whom his information is being obtained . . . ."); Goodno, 2020 WL 13551903, at *3 (addressing same).
[51]  See ECF No. 68 at 19; see also ECF No. 60-2 at 32, 35, 38, 41, 44, 93, 96, 98, 102, 105 (Rogers' alternative authorization forms, which authorize disclosure of psychotherapy notes).
[52]  McLeod, Alexander Powel & Apfel v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990) (quoting Joseph v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982)); Carr v. State Farm Mut. Auto. Ins. Co., 312 F.R.D. 459, 463 (N.D. Tex. 2015) (citation omitted); Samsung Elecs. Am. Inc., 325 F.R.D. at 590 (same).

her privacy interest.[53]  When a plaintiff asserts a disability discrimination claim, her underlying

disability is necessarily put at issue, making medical records relating to that disability relevant and

broad discovery appropriate.[54]  And when a plaintiff seeks emotional distress damages, her mental

conditions and related physical conditions are put at issue,[55] making medical records relating to

thereof relevant and broad discovery appropriate.[56]  Basic fairness requires the other party be

allowed "to explore the truth of the [party's] allegations that he/she suffered . . . emotional distress

---

[53] *Stogner v. Sturdivant*, No. 10-125, 2011 WL 4435254, at *5 (M.D. La. Sept. 22, 2011) (citing cases); *Tanner v. BD LaPlace, LLC*, No. 17-5141, 2018 WL 3528023, at *2 (E.D. La. July 3, 2018) (Feldman, J.) (citations omitted) (recognizing that privilege may be waived when a party places his medical condition at issue).

[54] *See e.g.*, *Clewis v. Medco Health Sols., Inc.*, No. 12-5208, 2013 WL 5354574, at *3 (N.D. Tex. Sept. 25, 2013) (compelling execution of HIPAA releases that permit discovery of information related to Plaintiff's alleged bipolar condition, based on which she asserted Texas disability discrimination claims, because Plaintiff "put at issue" that condition via her lawsuit and thus made the medical records "relating" to it "certainly relevant"); *Eubank v. Lockhart Indep. Sch. Dist.*, No. 15-1019, 2016 WL 11214437, at *1, *4-5 (overruling relevance objections to requests for production of all documents pertaining to medical conditions that plaintiff contends qualify her for accommodations under the ADA and Texas Labor Code because her physical health was put "into issue by her ADA claim" and her medical records are relevant to such), *aff'd*, 734 F. App'x 295 (5th Cir. 2018) (affirming "for essentially the reasons set out by the district court"); *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 129 (E.D. Pa. 1997) (finding "clearly relevant" to Plaintiff's disability discrimination claim under the ADA the "records of any of the providers containing information relating to the nature of Plaintiff's alleged disability, [clinical depression,] her need for medication, or the side effects of the medication").

[55] *See Hardy v. Scandinavian Airlines Sys.*, No. 21-1591, 2025 WL 416106, at *9 (E.D. La. Feb. 6, 2025) (finding plaintiff put her mental status at issue by seeking emotional distress damages and thus she waived any privilege she would otherwise be entitled to by her privacy interest in her medical records, including any mental health records); *Taylor v. Smith & Nephew, Inc.*, No. 18-234, 2019 WL 13207593, at *2 (S.D. Miss. Oct. 24, 2019) ("[T]his Court has held that '[b]y asserting a claim for emotional distress and mental anguish, [Plaintiff has] placed in issue any mental or physical conditions [of Plaintiff] which could have led to the claimed damages.'" (first brackets added) (quoting *Mass. Mut. Life Ins. Co. v. Hathcock*, No. 11-738, 2012 WL 12883641, at *2 (S.D. Miss. Aug. 14, 2012) (quoting *Williams v. NPC Int'l, Inc.*, 224 F.R.D. 612, 613 (N.D. Miss. 2004)))); *See Frazier v. Luther*, No. 24-262, 2025 WL 2856531, at *4 (N.D. Miss. Oct. 8, 2025) (requiring Plaintiff to execute authorizations that include and exclude psychotherapy notes because "Plaintiff has undoubtedly placed his mental health at issue by virtue of his negligent infliction of emotional distress claims" and the court was "unable, based on the briefing, to itself separate from Plaintiff's physical condition" from her "extensive past mental health treatment"); *cf. Sartin v. Exxon Mobil Corp.*, No. 22-603, 2023 WL 4836662, at *7 (M.D. La. July 27, 2023) ("'While mental health related to Plaintiff's emotional distress may be relevant, Plaintiff's remaining medical treatment is not.' Particularly, medical records 'pertaining to treatment for *purely* physical conditions' are not relevant or proportional to Plaintiff's claim for emotional distress damages." (emphasis in original) (quoting *Williams v. U.S. Env't Servs., LLC*, No. 15-168, 2016 WL 684607, at *10 (M.D. La. Feb. 18, 2016); *Merrill*, 227 F.R.D. at 473)).

[56] *Merrill*, 227 F.R.D. at 473 ("Utilizing th[e] broad construction of relevance in Rule 26(b)(1), several courts have found that medical records are relevant to claims of mental anguish in discrimination case." (citing *Fitzgerald v. Cassil*, 216 F.R.D. 632, 634 (N.D. Cal. 2003) (finding that medical records involving mental health, including physical conditions tied to mental health, were relevant under the broad definition of relevance in Rule 26(b)(1))); *Bacharach v. SunTrust Mortg., Inc.*, No. 14-962, 2015 WL 1843007, at *7 (E.D. La. Apr. 22, 2015) (granting request for production of "all of the Plaintiff's medical records, charts, progress reports, prognoses or other similar documents regarding any damages for which she seeks to recover in this case" because Plaintiff "is seeking emotional distress damages")).

as a result of the [other party's] conduct and to determine whether the [party] suffered any pre-existing . . . emotional distress" that may be the (or an) actual cause of the distress.[57]

Relying on *Singleton*, Rogers asserts that discovery must remain confined to the conditions a plaintiff has actually placed in controversy and that her allegations of emotional distress do not necessarily require wholesale access to the plaintiff's medical records.  ECF No. 68 at 19. *Singleton* is inapposite.  In that case, Magistrate Judge van Meerveld addressed "whether a plaintiff . . . put[s] her mental condition in controversy such that her medical records are relevant" just because the plaintiff seeks damages for garden-variety emotional distress and mental anguish.[58] Unlike *Singleton*, Rogers has explicitly put her mental condition at issue, which she recognizes, and her mental health records are relevant and subject to discovery.  ECF No. 68 at 18 ("[Plaintiff] acknowledges that her mental health and vision records are relevant . . . .").

Although neither party discusses the mental conditions for which Rogers receives treatment, it appears she experiences stress, anxiety, and depression.[59]  Thus, medical records related to those conditions are relevant and discoverable.[60]  Plaintiff must execute medical

---

[57] *Stogner*, 2011 WL 4435254, *5 (citing *Doe v. City of Chula Vista*, 196 F.R.D. 562 (S.D. Cal. 1999) (noting that, once a plaintiff has elected to seek such damages, she cannot fairly prevent discovery into evidence relating to that element of her claims because the defendants must be free to test the truth of the plaintiff's contention that her mental issues arise *because of* the defendants' conduct)) (explanatory parenthetical summarized); *accord. Sartin*, 2023 WL 4836662, at *6 ("Plaintiff cannot have it both ways, claiming emotional distress and damages yet resisting discovery to any other causes of any such emotional distress."); *Bacharach*, 2015 WL 1843007, at *7 ("[T]he Plaintiff's medical records are relevant to help the Defendant assess the Plaintiff's emotional distress claim and may provide the defendant with an alternative explanation for the Plaintiff's emotion distress claim." (citing *Hingle v. Bd. of Adm'rs of Tulane Educ. Fund*, No. 95-134, 1995 WL 731696, at *3 (E.D. La. Dec. 7, 1995))).
[58] 2020 WL 375600, at *4, *6.
[59] *See, e.g.*, 60-2 at 31 (authorizing disclosure of "conditions placed at issue in the litigation  (*including but not limited to* stress, anxiety, depression, hypertension, or vision-related impairments)" (emphasis added)).
[60] Hutson has not, however, established the need for any records relating to "treatment/evaluation for alcohol and drug/substance abuse." ECF No. 60-2 at 28.  Congress recognized a need to maintain the confidentiality of substance abuse records to encourage people to seek treatment when it adopted the Alcohol, Drug Abuse and Mental Health Administration Act, 42 U.S.C. §§ 290aa–290ff (1986) (the "Act").  This Act prohibits disclosure of records relating to alcohol and substance abuse treatment except by patient consent or court order after a showing of good cause.  *Guste v. Pep Boys-Manny, Moe & Jack, Inc.*, No. 02-3355, 2003 WL 22384947, at *3 (E.D. La. Oct. 14, 2003). (citing *Mosier v. American Home Patient, Inc.*, 170 F. Supp. 2d 1211, 1213 (N.D. Fla. 2001)).  Both the statute and related regulations carry a strong presumption against disclosing records of this kind, and the privilege afforded should not lightly be abrogated.  *Fannon v. Johnston*, 88 F. Supp. 2d 753, 758 (E.D. Mich. 2000).  In assessing good cause, the

authorizations seeking medical records related to these conditions (excluding any drug or alcohol treatment) for her providers that treat them.

As to physical conditions, although Rogers' specific "eye disease" is not identified,[61] she asserts claims based on that disability. Thus, medical records related to that condition are relevant. It is also unclear whether Rogers has physical conditions related to her mental conditions at issue. There may be records "pertaining to treatment for purely physical conditions,"[62] but it is Rogers' "burden" to "show that there is 'no possibility'" that those records "may be relevant to the claim or defense of any party or are of 'such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'"[63] She has not met that burden.[64]

Although Rogers has not demonstrated that her medical records could have no possible relevance, that does not mean that every medical record of any nature since birth would be relevant and proportional to the needs of the case and thus discoverable. Consistent with the obligation to ensure that discovery is within the scope permitted by Rule 26(b)(1), Rogers must identify the specific physical condition(s) resulting in her alleged disability (i.e., blurred vision) and execute medical authorizations seeking medical records relating to same from specified providers. Likewise, the authorization must include appropriate temporal limitations (e.g., psychotherapy

___

court weighs the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. *Id.* at 757. This is a heavy burden and met only in exceptional cases. *Id.* at 766. Hutson has made no showing of good cause.

[61] ECF No. 41 at 4 (¶ 4).

[62] *See Sartin*, 2023 WL 4836662, at *7 (holding medical records "'pertaining to treatment for *purely* physical conditions' are not relevant or proportional to Plaintiff's claims for emotion distress damages" (emphasis in original) (quoting *Merrill*, 227 F.R.D. at 473)).

[63] *Merrill*, 227 F.R.D. at 473-474 (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

[64] *Id.* at 474 (overruling relevance objections to requests for production of all medical records, even though some records relating to purely physical conditions may be irrelevant to plaintiffs' claims for mental anguish, because plaintiffs did not meet their burden to show no possibility of those records being relevant as plaintiffs "did not tender the disputed medical records for *in camera* review or otherwise provide a description of the medical records sufficient to allow the Court to independently determine relevant or weigh potential harm of disclosure").

notes from 2010 to date and medical records limited to one-year prior to any diagnoses of the conditions alleged to cause her disability). Indeed, courts often impose a time limitation[65] to ensure disclosures are proportional to the needs of the case.[66]

As to any burden of production, Rogers is not the proper party to object to the burden imposed on any provider. The only burden placed on her is to execute the authorization forms provided in RFP No. 14.[67] Thus, her burden objection is overruled. Likewise, her privacy objection is overruled.[68] This Court's sample protective order sufficiently addresses same and is well-tailored and regularly used to facilitate discovery without issue.[69]

## C. Employment Records

Courts have recognized a plaintiff has legitimate concern that the disclosure of her dispute with her past employer may have a direct negative impact on her current employment and consequently prohibited obtaining discovery from a current employer when there is a less intrusive method of discovery available.[70] Having failed to object timely on this basis in response to RFP

---

[65] *See, e.g.*, *Taylor*, 2020 WL 6204310, at *4 (limiting temporal scope of blank medical authorization); *Garza*, 2021 WL 3777739, at *5 (requiring plaintiff to sign authorization to release medical records, but limiting the time period of the authorization because defendant's request was overbroad); *L-3 Commc'ns Integrate Sys.*, 2018 WL 3548870, at *3 (limiting authorization for release of medical records to date that employee began working for defendant).

[66] *Tijerina v. Guerra*, No. 19-285, 2020 WL 1663181, at *9-10 (S.D. Tex. Apr. 1, 2020) (denying medical records request that was unlimited in time based on Rule 26(b)(1) proportionality factors where movant did not establish why the requested 5-year period would be insufficient); *Gray-Standberry v. Ashley Distrib. Servs., Ltd.*, No. 20-0638, 2021 WL 2792984, at *3 (W.D. Tex. Mar. 3, 2021) (finding request for 27 years' of medical records, including pediatric records, not proportional); *Stogner*, 2011 WL 4435254, at *6 (limiting medical records request to 10 years after finding request for 23 years' worth of records excessive); *Cummins v. Lollar*, No. 12-560, 2015 WL 12731746, at *2 (N.D. Tex. Jan. 5, 2015) (citation omitted) (request for 50 years' of medical records dating to birth is excessive).

[67] *See* ECF No. 60-2 at 26, 28; *Mir*, 319 F.R.D. at 232 ("[Plaintiff] has not shown that any burden or expense of the proposed discovery—which here involves simply signing the Releases—outweighs its likely benefit.").

[68] *See* ECF No. 68 at 19-21.

[69] The Court may *sua sponte* enter a protective order. *ELargo Holdings, LLC v. Doe-68.146.38*, 318 F.R.D. 58, 64 (M.D. La. 2016) (citing *Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB*, No. 12-963, 2012 WL 4387420, at *3 (S.D. Tex. Sept. 25, 2012); *Pamlab, L.L.C. v. Brookstone Pharms., L.L.C.*, No. 09-7434, 2010 WL 4363870, at *4 n.1 (E.D. La. Oct. 22, 2010) ("This Court has the authority to enter a protective order *sua sponte*." (citing *Seminara v. City of Long Beach*, 68 F.3d 481 (9th Cir. 1995))).

[70] *Richardson v. BBB Grp., Inc.*, No. 14-1014, 2014 WL 1724761, at *1 (N.D. Tex. Apr. 30, 2014) (citing *Hererra v. Easygate, LLC*, No. 11-2558, 2012 WL 5289663, at *2-3 (D. Kan. Oct. 23, 2012) (noting that subpoena issued by former employer to plaintiff's current employer is "by its nature subject to abuse" and holding that former employer

No. 14,[71] Rogers waived it.[72]  Even if she had timely raised the objection, Rogers has only had one subsequent employer, and she no longer is employed there.  *See* ECF No. 71-1 at 3 (¶ 7(f)) (Hutson's counsel declaration recounting Rogers' deposition testimony).  Thus, Rogers' subsequent employment could not be placed in jeopardy by the discovery.

The authorization is overbroad on its face, however, as it seeks disclosure of Rogers' entire personnel file.[73]  "Personnel files may contain tax records, drug results, and other such personnel, sensitive material," thus the disclosure must be limited to records *demonstrated* to be within the scope of Rule 26(b).[74]  Further, although Hutson "only seeks information from one subsequent employer,"[75] she fails to identify the employer by name despite knowledge of same.  *See* ECF No. 71-1 at 3 (¶ 7(f)).  Accordingly, Hutson's request is denied as to her original authorization form.

___

was not entitled to receive discovery directly from current employer if plaintiff had agreed to provide all relevant information herself); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 69-70 (E.D.N.Y. 2010) (recognizing potential harm of disclosing plaintiff's dispute with past employer to current employer and holding that subpoenas to current employer should be used only as a "last resort"); *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 255 (S.D. Ind. 2002) (former employer not entitled to subpoena plaintiff's employment records from current employer where less intrusive method of discovery available); *see Reed v. Madison Cnty.*, No. 16-51, 2016 WL 11640189, at *4 (S.D. Miss. Nov. 1, 2016) (citing cases) (denying motion to compel plaintiff execute personnel records authorization); *Sartin*, 2023 WL 4836662, at *9; *Mosley v. Liberty Mut. Ins. Co.*, No. 21-1699, 2022 WL 22838703, at *2 (N.D. Tex. Oct. 14, 2022).

[71] *See* ECF No. 58-1 at 26-27.

[72] *Ferguson v. Sw. Reg'l PCR, LLC*, No. 22-182, 2023 WL 4938091, at *7 (N.D. Tex. June 22, 2023) (citing *Lopez* 327 F.R.D. at 582 ("[E]ven where the responding party has timely served some objections . . . waiver extends to any grounds not stated in a timely objection."); *Orchestratehr, Inc. v. Trombetta*, No. 13-2110, 2015 WL 11120526, at *9 (N.D. Tex. July 15, 2015) ("Any objection that [defendant] may be newly raising in response to [p]laintiff's motion to compel is untimely and waived.")).

[73] *Zamora*, 2017 WL 1861843, at *5 (quashing defendant's request to plaintiff's prior and subsequent employers for her "entire personnel files" (citing *Pena v. Burger King Corp.*, 12-248, 2012 WL 12547064, at *2 (E.D. Va. Sept. 21, 2012) (finding, in an ADA case, subpoenas seeking "the complete employment file" from plaintiff's former employers overbroad, stating they "could be quashed on this basis alone without addressing relevance," and quashing same); *EEOC v. Renaissance III Org.*, No. 05-1063, 2006 WL 832504, at *1 (N.D. Tex. Mar. 30, 2006) (quashing, in a Title VII case, subpoena for "wholesale production of confidential employment records"); *Webber v. Mark One Elec. Co.*, No. 09-0607, 2010 WL 2134323, at *1 (W.D. Mo. May 26, 2010) (sustaining, in a Title VII case, objection to defendant's subpoena for "any and all records relating to [plaintiff]," finding they exceeded the scope of permissible discovery and noting the "subpoena appears to be a fishing expedition into plaintiff's work and personal history.")).

[74] *Pattin v. Jantran Inc.*, No. 23-5921, 2025 WL 1158902, at *6 (E.D. La. Apr. 22, 2025) (citing *Dufrene v. Am. Tugs, Inc.*, No. 18-554, 2018 WL 6448838, at *9 (E.D. La. Dec. 10, 2018) ("The privacy concerns implicated by a personnel file are distinct from those presented by a custodial file, because they are far more likely to contain personal, sensitive material" (citing *Williams v. Roy O. Martin Lumber Co. L.L.C.*, 51 F. App'x 483, 2002 WL 31319337, at *6 (5th Cir. 2002) (noting that "alimony and child support garnishment, tax records and drug results" may be found in a personnel file)))) ("Plaintiff has failed to demonstrate how that type of information would have any bearing on the issues in this case.").

[75] ECF No. 71 at 12.

Hutson may obtain relevant employment information directed to Rogers' specific employer, limited to information in the personnel file within the ambit of Rule 26.

### 1. Payroll Records

Rogers objects to disclosure of payroll records, arguing same are duplicative and disproportionately burdensome. *See* ECF No. 68 at 21-22. Hutson appears to disagree with Plaintiff's assertion that she has adequately produced records relevant to her claim of back pay and Hutson's mitigation defense. *See* ECF No. 60-1 at 22; *see also* ECF No. 60-2 at 83 (In September 17, 2025, email, Hutson's counsel stating there has be no production of "any records reflecting Plaintiff's post-employment income" despite Rogers' counsel asserting production would be duplicative). Although Plaintiff appears to have produced e-signed tax and social security earnings authorizations,[76] courts have allowed discovery of payroll records when necessary to ensure adequate production even when same is potentially duplicative.[77]

### 2. Subsequent Job Applications

Hutson's request for subsequent job applications is appropriate and falls within Rule 26 as application materials are relevant to mitigation efforts to obtain comparable employment.[78] To the extent that Rogers has applied to any employers other than the one employer she identified in her deposition, Plaintiff must identify same and provide a signed employment records authorization for the release of application materials.

---

[76] *See* ECF No. 60-2 at 54-55.
[77] *See Zamora*, 2017 WL 1861843, at *7; *Blair v. Pride Indus., Inc.*, No. 14-183, 2015 WL 11251771, at *3 (W.D. Tex. Jan. 27, 2015).
[78] *Cruz v. R2Sonic, LLC*, No. 18-397, 2019 WL 7667330, at *3 (W.D. Tex. May 6, 2019) (citing *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 487-88 (5th Cir. 2007) (noting that compensation, promotional opportunities, job responsibilities, working conditions, and status are relevant to job comparability); *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936-37 (5th Cir. 1996) (vacating a back-pay award where the plaintiff was involuntary discharged for excessive absences, using company property for personal reasons, and conflicts with other staff)).

### 3. Accommodation Requests

In this disability case, Rogers asserts failure-to-accommodate, which requires a plaintiff to prove (1) she is a qualified individual with a disability; (2) the disability with its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for the known limitations.[79] Hutson asserts a defense that, to the extent Hutson denied accommodations, the accommodations would have been an undue burden, ineffective, or unreasonable. ECF No. 50 (seventeenth defense).

Rogers has failed to show there is no possibility that requests for accommodation from her subsequent employer are relevant or are only marginally relevant. Though incorrectly describing it as Fifth Circuit precedent, she cites *Blummer v. United Space Alliance, LLC*[80] to support her assertion that the treatment of subsequent employers has no bearing on her claims against Hutson. *See* ECF No. 68 at 26. But in *Blummer*, the court addressed a request for production of a signed release for plaintiff's employment records held by her *former* employers, noting the extent to which other employers accommodated plaintiff "could help determined whether [the defendant's] accommodations, if any, were reasonable" but ultimately finding the records not relevant as they were "from many years ago" and thus they were "unlikely to be probative of how much accommodation [plaintiff's] disability may have required" for her employment at issue.[81] Courts have found requests for accommodation made to subsequent employers discoverable and consequently ordered production.[82] Although it has been approximately three and one-half years

---

[79] *Huber v. Blue Cross & Blue Shield of Fla., Inc.*, No. 20-3059, 2021 WL 1023052, at *4 (E.D. La. Mar. 17, 2021) (Lemmon, J.) (citing *Fiest v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).
[80] No. 09-326, 2009 WL 10714911 (S.D. Tex. Aug. 6, 2009).
[81] *Id.* at *2.
[82] *See Gondola v. USDM PPM, LLC*, 223 F. Supp. 3d 575, 583 (N.D. Tex. 2016) (ordering plaintiff to sign authorization for, among other things, "any employment applications submitted by Plaintiffs that discuss their reasons for leaving their employment with Defendant or their disabilities or needs or requests for accommodations" in ADA discrimination and retaliation case); *Smith v. Int'l Bus. Machs. Corp.*, No. 17-175, 2019 WL 13413369, at *10 (N.D. Ga. Jan. 3, 2019) (deny plaintiff's motion to quash defendant's subpoena directed to plaintiff's current employer that

since Rogers' termination,[83] she has not established that her accommodation requests to any subsequent employer would have no possible relevance to her failure-to-accommodate claim in this case.

### 4. Records of Disciplinary Actions and Discrimination Complaints

Rogers' Federal Rule of Evidence 401 and 402 objections to disclosure of subsequent employment disciplinary record and complaints of discrimination is misplaced. The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissible evidence at the trial stage.[84] However, courts generally do not permit discovery of a plaintiff's disciplinary records for the purpose of attacking her general credibility; such request is nothing more than a fishing expedition.[85] While Hutson asserts Rogers' disciplinary record is relevant to her credibility and state of mind, the cases she cites provide no support. Rather, those cases concern discovery of complaints of discrimination made by plaintiffs to other employers.[86] They permitted discovery as the complaints "could be relevant" to show a plaintiff's "motive, state of mind, credibility,

---

requested, among other things, "requests for accommodations" because plaintiff has failed to demonstrate its scope exceeded the scope of Rule 26 and noting "information about accommodations requests . . . at her current employer may shed light on . . . whether the accommodations she sought from Defendant were reasonable").

[83] *See* ECF No. 60-2 at 44 (Plaintiff's proposed authorization noting her employment with OPSO ended in February 2022).

[84] *Rangel*, 274 F.R.D. at 590.

[85] *See Richards v. Lufkin Indus., LLC*, No. 14-136, 2016 WL 11650897, at *3 (E.D. Tex. Apr. 14, 2016) ("While [plaintiff's disciplinary records or discharge/termination records held by his former employers] may be generally discoverable under Rule 26, defendant should not be permitted to go on a fishing expedition through [plaintiff's] employment history in an effort to attack his character and credibility in general." (citing *Reynolds v. York*, No. 04-45, 2004 WL 1490040, at *1 (N.D. Tex. July 2, 2004) (defendant's requests for records of plaintiff's former employer in an attempt to impeach credibility was overly broad and "amounts to nothing more than a fishing expedition")); *Hardnett v. La. Health Serv. & Indem. Co.*, No. 20-132, 2021 WL 278299, at *3 (M.D. La. Jan. 27, 2021) (quashing subpoena to the extent it requested plaintiff's personnel records, performance reviews, disciplinary records as defendant wanted to know what information plaintiff may have provided to her current employer regarding the reasons for her termination with defendant for the purpose of impeaching her credibility (citing *Hansen v. Alamo Mobile X-Ray & EKG Servs.*, *Inc.*, No. 14-1070, 2015 WL 12866215, at *3 (W.D. Tex. Oct. 7, 2015) ("[E]fforts to use third-party subpoenas to obtain a personnel filed and other documents in the hope of impeaching the plaintiff's credibility amounts to nothing more than a fishing expedition." (internal quotation and citation omitted)))).

[86] *See Williams*, 2016 WL 684607, at *8; *Baptiste v. Ctrs., Inc.*, No. 13-71, 2013 WL 3196758, at *3 (M.D. Fla. June 21, 2013); *Graham*, 206 F.R.D. at 256.

modus operandi, and to cast doubt on plaintiff's claim for emotional damages."[87]  But to the extent disciplinary records are relevant to support Hutson's termination or disciplinary decisions, the information is relevant to her defense and thus falls within Rule 26.

Accordingly, Rogers is required to execute an employment records release authorization addressed to her subsequent employer identified in her deposition limited to require production of payroll records, application materials, requests for accommodation, disciplinary records, and complaints of discrimination.  To the extent that she has applied to any employers other than the one employer she identified in her deposition, Rogers must identify same and provide a signed employment records authorization for the release of application materials.

## V.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED Defendant Susan Hutson's Motion to Compel is GRANTED IN PART AND DENIED IN PART as stated herein.

IT IS FURTHERED ORDERED that Rogers execute appropriately prepared HIPAA Authorizations for Use and Disclosure of Psychotherapy Notes (excluding any records relating to "any treatment/evaluation for alcohol and drug/substance abuse") limited to records from 2010 to date that include an expiration date or event and are addressed to specific healthcare providers. Rogers must execute same within 7 days of service by Hutson.

---

[87] *Williams*, 2016 WL 684607, at *8 (quoting *Maxwell v. Health Ctr. of Lake City*, 2006 WL 1627020, at *4 (M.D. Fla. June 6, 2006)); *accord. Baptiste*, 2013 WL 3196758, at *3 ("[I]nformation regarding any prior complaints of discrimination by Plaintiff could bear on hear credibility in this discrimination case." (citing *Valentine v. Remke Mkts., Inc.*, No. 10-922, 2012 WL 893880, at *3 (S.D. Ohio Mar. 15, 2012); *Jackson v. Parker*, 2008 WL 4844747, at *2 (N.D. Ill. Nov. 7, 2008))); *Graham*, 206 F.R.D. at 256 (permitting defendant to discover previous complaints, grievance, lawsuits, and charges filed by plaintiff during her tenure with a former employer (discussing *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490 (7th Cir. 1998)); *see also Gastineau*, 137 F.3d at 495 (holding that evidence that plaintiff had sued three of his former employers was admissible to show plaintiff's motive, state of mind, credibility, modus operandi, and to cast doubt on plaintiff's claim for emotional damages).

IT IS FURTHERED ORDERED that Rogers execute appropriately prepared HIPAA Authorizations for Use and Disclosure of Information for Rogers' medical records limited to records relating to her eye disease beginning from 1 year before the date of diagnosis to present that include an expiration date or event and are addressed to the six specified healthcare providers from which Hutson requested disclosure within 7 days of service by Hutson.

IT IS FURTHER ORDERED that Rogers execute an Employment Records Release Authorization form addressed to Rogers' subsequent employer, limited to require production of payroll records, application materials, requests for accommodation, disciplinary records, and complaints of discrimination within 7 days of service by Hutson.

IT IS FURTHER ORDERED that to the extent she has applied to any employers other than the one identified during herdeposition, Rogers must execute an Employment Records Release Authorization form addressed to each employer authorizing disclosure of her application materials within 7 days of service by Hutson.

IT IS FURTHER ORDERED that parties' requests for attorneys' fees and costs are DENIED pursuant to Rule 37(a)(5)(C).

The Court will enter its sample protective order to govern discovery in this case.

New Orleans, Louisiana, this ___30th___ day of December, 2025.


DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE